ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>EDUARDO FRANCISCO ZARAGOZA,  )<br>  )<br>  Defendant.  )<br>  ) | Case No. 05-40008-01-JAR |

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on defendant's Motion to Dismiss for Violation of Interstate Agreement on Detainers (Doc. 19). The parties have fully briefed the motion and the Court heard oral argument on the matter on January 22, 2007. The Court has thoroughly considered the parties' briefs and the arguments presented at the hearing, and is now prepared to rule. For the reasons stated below, defendant's motion is denied.

### *Background*

The Indictment in this case was filed on February 8, 2005, while defendant was in custody at the El Dorado Correctional Facility ("EDCF"), where he was serving a state sentence. On February 21, 2005, defendant was served with a Detainer Against Sentenced Prisoner ("Detainer"), by the U.S. Marshal in the District of Kansas. The Detainer provided notice of the criminal charges filed against defendant in this Court, and notice of his speedy trial rights under the Interstate Agreement on Detainers Act ("IADA"). The detainer advised the EDCF custodian to read or show to the defendant the following:

> You are hereby advised that a Detainer has been filed against you on 02/14/2005, on the basis of Federal criminal charges riled [sic] against you in the U.S. District Court for the District of Kansas.  With regard to answering these charges, you are hereby advised that you have the right to demand a speedy trial under the Interstate Agreement on Detainers Act (IADA).  Under the IADA, you have the right to be brought to trial within 180 days after you have caused to be delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court, written notice of your request for a final disposition of the charges against you.  Because the 180-day time limit may be tolled by virtue of delays attributable to you, you should periodically inquire as to whether your written notice of request for a final disposition of the charges against you has been received by the appropriate U.S. Attorney and the appropriate U.S. District Court.  You are hereby advised that the 180-day time limit does not commence until your written notice of request for final disposition of the charges against you has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court.

The Detainer then provides a place for the prisoner to execute his demand for speedy trial under the IADA.  In this section, the Detainer provides that, "I understand that if I do request a speedy trial, this request will be delivered to the Office of the United States Attorney who caused the Detainer to be filed."  But the Detainer went on to repeat that the statutory 180-day clock is triggered by actual delivery to the appropriate U.S. Attorney and U.S. District Court.  Finally, the Detainer instructs the prison custodian to forward the Detainer by registered or certified mail to the U.S. Attorney for the District of Kansas and to the U.S. District Court for the District of Kansas.

Defendant executed the Detainer, demanding a speedy trial.[1]  On April 4, 2005, defendant was reassigned to the Norton Correctional Facility ("NCF") and on that same day, he filed an "Inmate Request to Staff Member" form to an NCF records employee asking about the

---

[1](Doc. 19, Ex. B at 2.)

status of his federal charges and reasserting his desire to file a "180 day writ." On April 5, 2005, an NCF records employee responded: "I couldn't tell if it was mailed in—so I remailed it certified." NCF received a certified mail receipt showing delivery to the U.S. Marshal's Service in Topeka, KS

on April 8, 2005. Defendant ultimately filed three more "Inmate Request to Staff Member" forms asking about the federal charges and at one point, asking that his speedy trial demand be sent to the U.S. Attorney and District Court in the District of Kansas. On August 11, 2005, an NCF employee responded, "I mailed it 4-6-05 & they received it 4-8-05. It is now between you, your attorney, & the court." On January 9, 2006, the same employee responded, "You need to see your unit team counselor regarding copies." Finally, on January 17, 2006, the employee responded, "It has already [sic] been filed on. They received it by certified mail 4-8-05."

On October 10, 2006, the U.S. Attorney filed a Motion for Writ of Habeas Corpus ad prosequendum (Doc. 2). The writ was issued on October 16 and defendant was arrested on October 19. Because more than 180 days passed between his demand for a speedy trial under the IADA and his arrest, defendant urges the Court to dismiss the Indictment in this matter.

*Analysis*

All jurisdictions within the United States have joined the IADA.[2] Under Article III(a) of the IADA, when

> [A] person has entered upon a term of imprisonment in a penal or correctional institution of a party State,[3] and whenever during the continuance of the term . . . there is pending in any other party

---

[2] 18 U.S.C. App. 2.

[3] Under the IADA, "State" includes a State of the United States and the United States of America. 18 U.S.C. App. 2 § 2, art. II(a).

3

> State any untried indictment . . . on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer written notice of . . . his request for a final disposition to be made of the indictment . . . .[4]

The IADA further advises in Article III(c) that if the prisoner requests final disposition pursuant to subsection (a), the "warden, commissioner of corrections, or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the State to which the prisoner's request for final disposition is being sent." The notification is to be sent with copies of the prisoner's written notice, request, and certificate. Under Article V(c), if an action on the indictment on the basis of which the detainer is brought is not brought to trial within the 180 day period, the court should enter an order dismissing the case with prejudice.[5]

In *Fex v. Michigan*,[6] the United States Supreme Court held that the term, "shall cause to be delivered," in Article III(a) means that the 180-day clock does not begin to run until "the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."[7] In *Fex*, the defendant had urged an IADA interpretation that would measure the 180-day clock from

---

[4] 18 U.S.C. App. 2 § 2, art. III(a).

[5] *See also id.* § 9(1) (allowing dismissal with or without prejudice when the receiving court is a "receiving state").  In his motion, defendant asserted that even if there was no explicit violation of the IADA, the case should be dismissed under an estoppel theory based on the delivery to the Marshal's Service, as an arm of the U.S. Attorney. Defendant, however, conceded at oral argument that this estoppel argument would not cure the defect because it would still not have effected service to the district court.  Thus, the Court only discusses whether the case should be dismissed due to an IADA violation or under Fed. R. Crim. P. 48(b).

[6] 507 U.S. 43 (1993).

[7] *Id.* at 52.

4

the time the prisoner delivered the request for final disposition to the warden. The defendant maintained that otherwise, a warden could delay forwarding the request and postpone the starting point of the clock. In countering this argument, or "worst case scenario," the Court stated:

> That result is bad, given the intent of the IAD. It is, however, no worse than what regularly occurred before the IAD was adopted, and in any event cannot be entirely avoided by embracing petitioner's view that transmittal to the warden is the measuring event. . . . [T]he careless or malicious warden, under petitioner's interpretation, may be unable to *delay* commencement of the 180-day period, but can *prevent it entirely*, by simply failing to forward the request. More importantly, however, the worst-case scenario under petitioner's interpretation produces results that are significantly worse: If, through negligence of the warden, a prisoner's IAD request is delivered to the prosecutor more than 180 days after it was transmitted to the warden, the prosecution will be precluded before the prosecutor even knows it has been requested. . . . It is more reasonable to think that the received State's prosecutors are in no risk of losing their case until they have been *informed* of the request for trial.[8]

The Tenth Circuit has upheld this strict interpretation of the IADA when applied to delivery by a state prison custodian to the U.S. Attorney but not to the district court.[9] The Ninth Circuit reversed a district court's dismissal of an indictment for violation of the IADA when the detainer was delivered to the U.S. Marshal, but not to the U.S. Attorney or district court.[10] The Second Circuit also applied the *Fex* holding in ruling that delivery to the U.S. Marshal was insufficient to effect service to the district court, and expressed doubt about any agency theory

---

[8]*Id.* at 50–51 (emphasis in original).

[9]*United States v. Martinez*, 198 Fed. App'x 704 (10th Cir. 2006) (finding district court did not commit clear error in finding that defendant's IADA speedy trial rights did not begin to run when he notified a caseworker orally of his request for trial, even though transmitted to the U.S. Marshal).

[10]*United States v. Rodriguez-Aguilera*, 65 Fed. App'x 118, 120 (9th Cir. 2003) (reversing district court decision that dismissed case for IADA violation when notice sent only to U.S. Attorney and not to district court).

that would have rendered delivery to the U.S. Marshal as delivery to the "prosecuting officer."[11]

The facts of this case are analogous to those facts in *Paredes-Batista* and in *Rodriguez-Aguilera*. As in those cases, while the detainer was delivered to the U.S. Marshal, it was neither sent to the U.S. Attorney nor the district court. It is clear that the NCF records custodian failed to follow the IADA by sending defendant's request for disposition to the U.S. Marshal only and not to either the United States Attorney or the district court. Although defendant followed the instructions in the detainer and periodically inquired about the status of his request, the records custodian mistakenly relayed to him that the request had been sent in April 2005.

Defendant does not contest that his request was not sent in April 2005 to either the U.S. Attorney or the district court, and does not suggest that the U.S. Attorney had knowledge of his request within 180 days of that time. In *Rodriguez-Aguilera,* the Ninth Circuit commented: "We abhor the sloppy procedures and failure of state and federal officials to protect the prisoner's rights in this case, but we have no choice but to hold that the district court erred in granting [defendant's] motion to dismiss based on a violation of his IAD rights."[12] The Court echoes this sentiment and under the strict interpretation of the IADA outlined in *Fex*, denies defendant's motion to dismiss for violation of the IADA.[13]

---

[11] *United States v. Paredes-Batista*, 140 F.3d 367, 374 (2d Cir. 1998) (citing *United States v. Collins*, 90 F.3d 1420, 1426 (9th Cir. 1996)), *cert. denied*, 525 U.S. 859 (1998). Defendant suggested at oral argument that this case is inapposite because the notice was initially sent to the U.S. Marshal in the wrong jurisdiction. In fact, the USM-17 detainer form was sent to the U.S. Marshal's office in the Western District of New York, which forwarded the detainer to the U.S. Marshal's office in the Southern District of New York. The delay at issue, however, was a seven-month delay between the time the detainer was sent to the Southern District and when the U.S. Attorney and district court were actually notified. *See id.* at 373. The crux of the issue in that case was whether delivery to the U.S. Marshal in the Southern District was sufficient to begin the 180-day clock under the IADA. *Id.* at 374.

[12] *Rodriguez-Aguilera*, 65 Fed. App'x at 120.

[13] Defendant also points the Court to the language in the detainer, stating that it would "be sent to the Office of the United States Attorney," as evidence that defendant was misled. This Court joins the criticism lodged by the Second Circuit against this USM-17 form, as even if this statement sufficed, it would clearly not be in compliance

In the alternative, defendant asks that the Court dismiss under Fed. R. Crim. P. 48(b), in its discretion. Defendant urges that the Court could use this rule to dismiss an indictment for delay, even if no constitutional or statutory violation occurred. Defendant maintains that his extreme effort to assert his rights in compliance with the detainer instructions and the ineffectual state prison procedures make this case a good candidate for discretionary relief. Rule 48(b) provides that "[t]he Court may dismiss an indictment . . . if unnecessary delay occurs in . . . (3) bringing a defendant to trial." Again, while the Court understands that mistakes were made by the state prison officials in this case, the Supreme Court has rejected "fairness and higher purpose" arguments because they "assume the availability of a reading that would give effect to a request that is never delivered at all."[14] Furthermore, the Court uses "caution in exercising extraordinary power where laws and rules specifically designed to prevent pretrial delay do not require dismissal."[15] As already discussed, the IADA—the law specifically designed to prevent pretrial delay under these circumstances— was not violated. The Court declines to exercise its discretion and dismiss under Rule 48(b).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Dismiss for Violation of the Interstate Agreement on Detainers (Doc. 19) is **denied**.

**IT IS SO ORDERED.**

---

with the IADA since it does not state that the detainer would be sent to the district court as well. *Paredes-Batista*, 140 F.3d at 373 (explaining that despite the problematic administrative routines associated with the detainer, and with this form in particular, the district court did not find evidence of bad faith or affirmative misconduct that would warrant estoppel of the U.S. Attorney's claims that it had not received the detainer form).

[14] 507 U.S. 43, 52 (1993).

[15] *Paredes-Batista*, 140 F.3d at 376 (quoting *United States v. Simmons*, 812 F.2d 818, 820 (2d Cir. 1987)); *see also United States v. Payner*, 447 U.S. 727, 734–37 (1980).

Dated this 25th day of January 2007, at Topeka, Kansas.

                                                  S/ Julie A. Robinson
                                                  Julie A. Robinson
                                                  United States District Judge

United States v. Zaragoza, Case No. 05-40008-01-JAR, *Memorandum and Order Denying Defendant's Motion to Dismiss.*